Well, last case of our session. Case 5-14-0532, City of Bridgeport v. Workers' Compensation Commission. Counselor, you may proceed. Thank you. May I please the court? My name is Mark Cozzamini, and I represent the City of Bridgeport. This is an interesting, tragic, but interesting case. Sad and tragic as well as interesting. I totally agree. By all accounts, Mrs. Harvey was an extraordinary woman. She was a very nice person. Apparently, you're familiar with the facts. I would say that we are. Would that surprise you that we're familiar with the facts? With this case, no. This is unusual. It's unusual. Three disputes, standard of review, accident, and an employer-employee relationship. With respect to the standard of review that's only relating to the accident issue, I think there's an argument to be made that it should be a de novo review, that it's a matter of law. De novo review as to whether or not she was an employee or an independent contractor? No, sir. With respect to whether the accident or was out of the employment. No, sir. The employer-employee is clearly a manifest way question. I think there's an argument to be made that the accident issue is a matter of law. But the facts are not in dispute. I think we can all agree that she had an underlying seizure condition. She had a seizure. She fell, landed in the water, and subsequently died. I mean, there, just to move ahead, there's arguments or evidence on both sides of an employee-employee relationship and independent contractor. But the right to control seems to be a pretty strong factor in his favor. In terms of the hours, when the work had to be done, how the work was supposed to be done, the equipment they provided her to do it. So, tell us why she was not an employee. Well, I think where I differ there is that there was no right to control. I mean, all the supervision that took place involved showing her how to use this wand, which, by all accounts, didn't take very long at all, and showing her where all these different meters were throughout the city. Once that was done, and during those first two efforts that she had done, the first two months, there was to be no more supervision. I equate this to a neighborhood kid mowing your lawn. You tell them, mow it on the weekend. I don't care if it's Saturday morning, Sunday night, sometime on the weekend. You say, go ahead and use my mower. I'll show you how to use it. I'll pay you when you're done. I think that's pretty analogous to what we have here. Would you make the same argument if you were the only lawn you ever mowed? I think I would. I don't think so. If you're the only person he mows the lawn for, you supply him with the lawn mower? Well... You tell him when he can mow the lawn? Real strong argument to be made. He's your employee. As it turns out, Mrs. Harvey also read meters for the city of Lawrenceville. So it wouldn't be the only lawn. He'd be mowing the other neighbor's lawn, too. So in that respect, I think I would disagree with your premise. Well, Mr. Boltman, who's that? He was a supervisor. Testify that the scene was to contact him or City Hall if he had a problem reading the meters, if he was involved in an accident while working, if he damaged a customer's property, had some confrontation with a customer. Well, he's an independent contractor. Why does he care about that? I think it's more of common courtesy. It's just you'd expect the kid to tell you he mowed over your wife's rose bushes, too. You'd expect the kid to tell you... She's not a kid. I mean, she's a truly independent contractor. She's told, go do a job, get it done. If you've got a problem, that's your problem, not ours. But that's not exactly what happened there. Well, I don't think that takes it to the level of making her an employee. I don't think that's a control factor. She's performing the duties on her own. There's no supervision. There's no reporting to anyone. Let me ask you a difficult question. This sometimes comes to life more in trucking cases. Let's assume, arguably and objectively, there's evidence on both sides. Some evidence to suggest she's an employee. There's some evidence to suggest she's an independent contractor. Isn't there a body of law that says ultimately it's the commission's determination that really matters on that issue? Sure. Unless it's contrary to the manifest way of the evidence. So it's a matter of... The opposite conclusion is clearly apparent to us. Correct. That's what the body of case law says. That's exactly right. One thing that I wanted to point out, though, that is not really addressed by the commission, is the board of education versus the commission case, where they talk about mutual assent. Now, in that case, it involved a volunteer student working at a school. And she would report to the assistant principal, and he would give her daily assignments, and clearly had a considerable amount of control over the student's activities. And I would argue significantly more control than what the city had over Ms. Harvey. And the appellate court held that she was not an employee because there was no mutual assent of an employer-employee relationship. Nobody contemplated an employment relationship. I think we have the same thing here in this case. She was certainly hired to do a job for the city. There's no doubt about that. Same as the student. She wasn't volunteering. No, no, that's true. The payment is a distinguishing factor, sure. But the concept of what the appellate court said was that without a mutual assent, without an agreement on each side to have the intent to form an employment relationship, there can't be an employment relationship. So you would say neither side here could have enforced this contract, whatever it was? Well, I think either side could have gotten out of it. If that were the case, every time we have an employer-employee question, the employer would merely say, I never intended to be an employer-employee, and therefore it can't be. Well, I think in most situations you've got some documentation of a hiring or there's a payment of benefits. Every trucking company case we get in here, the trucking company said, I never intended these people to be my employee. My only employee intended them to be independent contractors. They lose almost every time. Well, I guess I would differ with the premise there that in each of those cases, there's evidence of a significant amount of control. And I would argue that there's not that level of control here. Who supplied her with the equipment she had to use in order to do her job? The wand was supplied by the city. Who supplied her with the batteries that had to go into the wand? Also the city. Who charged the batteries every evening? Both. Whose obligation was it to furnish water to these people? That's also the city. And whose obligation then was it to determine how much water was used by these people? If you mean like for billing requirements, that would probably be the city as well. So she's discharging an obligation. I mean, she's performing an obligation that it was the city's duty to do. I don't take it that far. I don't make that leap. That's okay. You don't have to. Somebody has to make the leap. Maybe it'll be us. That could be. That could be. But I think given the amount of flexibility she had, given the lack of intent to form an employment relationship, I think the commission was wrong. And obviously, we know what the factors are. We've reviewed the briefs. We've reviewed the law. What about your other argument, your second attack, is that this was really an idiopathic fall and generally that's not compensable. So that's your other position. Instead of spending all your time on the first, why do you maintain that position? Well, certainly this was a personal risk. And I think once you get through all the analysis, it comes down to was she exposed to a risk greater than that to which the general public was exposed. Right. If it was merely and purely an idiopathic fall, then you'd have a very compelling argument. But there are some factors that indicate that she simply didn't die because she fell over. There are some other factors involved. We're talking about what I call a rain puddle, what Mr. Edmond calls a jungle death trap. And the truth is probably somewhere in between. No question it was sufficient for her to drown. Sure. Whatever you call it. Absolutely. There's no question about that. The coroner, the pathologist, everyone agrees that the drowning was the cause of death. Right. Here's the point of question I have to ask you, and we understand the argument about the general public. Let me ask you a point of question. Is the general public routinely exposed to 8-inch water walking through the woods in low-lying areas? Is that something the general public is generally exposed to? I mean, that's a question, isn't it? It's a question. But the only evidence in the record is that this is a common type of area in that part of the state. Four different witnesses testified to that. I think it was Boatman, Sechrest, Rollins, and I think the mayor was the fourth one. There's zero evidence that this was a unique situation in that area. Okay. So it's open to the public. But on the test of whether the general public is generally routinely exposed to death, why would we draw the conclusion that the general public is? Not that it's open to the public. It's common to the public. Okay. And if it's common to the public, the risk is common to the public. What does that mean? People are there? It's common to the public? There's standing water throughout the area. There's low-lying areas throughout the area. Wait a minute. Hold on. Merely because it's open to the public and the risk is common to the public and, therefore, there can't be any recovery? Is that your argument? Well, I think that's what the no greater risk argument is. How about there's a big crack in the sidewalk out in front of this building and there's a traveling employee that has to walk down that sidewalk. That sidewalk is open to the public. But if that employee trips on that crack in the sidewalk, they're going to recover. Well, the Brays case says that in that situation she was walking more frequently across that area. So it was based on the frequency of her traveling that it was compensable. The Metropolitan case says she only had to do it once. So the only thing I'm suggesting is merely because the public could go to this place doesn't establish that she wasn't exposed to any risk greater than the general public. The general public doesn't have to go tramping through the woods to a water meter that's half underwater and read it. Well, I think the evidence is that the general public does deal with standing water. Well, we understand they deal with standing water. Do they do it where they have to bend down and read a meter? Well, I think we can argue about what her physical requirement is. What about this part of this argument? Maybe this is too subtle. But even if we take your argument to the logical extension, you would have a point there about the general public. Can't the general public avoid going into the water and bending down? But she can't. That's part of her job. Could she go back to the city and say, I'm not going to go in the woods and do these meters anymore? I mean, in all candor? No, but she can wait until it's dry. She can wait until later in the week. Because she can pick whichever order she wants. Six or eight inches of water is going to evaporate in a week? Her negligence isn't at issue here. Her negligence isn't at issue here. Oh, not at all. In this particular case, we've got a rural area.  And the only reason she's there is to read the meter. The general public, it's not a sidewalk. The general public doesn't have to go into those woods in the rain. She had to go there to read that meter. At some point during the week, that's correct. Well, is there any evidence that this water wasn't always standing there? I mean, was there any evidence about that at all? The evidence is that it's a low-lying area. Because you're telling us, on the one hand, that the evidence is that there's a lot of these low-lying areas. They're there all the time. The public is exposed to them. And then you say, well, she could have come back in a couple of days and it wouldn't have been there. But is there proof of that? Well, the evidence is that, yeah, these low-lying areas and standing water is common in that part of the state. As far as when she would have to go, that just gets to the flexibility of her job. There's no evidence that it would have all evaporated in a matter of six days. So it could have been the same conditions? The entire period of time she had to read the meter. That's right. I was just responding to the statement that she had to be there at that time. And the commission could have inferred that. Counsel, you argue in your brief, de novo standard of review here, are you continuing to maintain that only a single inference can be obtained from these facts? I think it's, in my view, it's a matter of semantics. I think the facts are undisputed. But if different inferences can be drawn from the same facts, it's a manifest way standard. It's not de novo. I understand. And I don't think it's a matter of different inferences being drawn as much as a different conclusion as a matter of law. I don't understand conclusion as a matter of law. Well, the facts are not in dispute. And whether or not there's different inferences, you can make an inference which, in this case, the only inferences are whether or not, as a matter of law, it's compensable. Whether or not there's a risk greater than the public. But that's every case. The ultimate question is, is it compensable as a matter of law? Yes or no. So every case should be de novo reviewed. No, sir. That's not what I'm contending at all. The problem I have with this argument is, you seem to be suggesting that because she couldn't have gone there on a different day when it was drier, that she can't recover. That's totally irrelevant. The fact that she could have gone there at some other time, it doesn't enter into this at all. The question is, what was she doing there on the day she drowned? And she was reading that meter. The fact that she could have gone there when it was drier or that she shouldn't have gone there when it was wet is wholly irrelevant. This is not a negligence-based statute. That's not my argument. Or assumption of the risk. That was not my argument. I was responding to a question. My argument is that she was not exposed to a greater risk. Then who? Then the public. Does the public go into that wet area on a regular basis and read meters? No, sir. But four different witnesses said this area is common in that part of the state. That's fine. But the general public doesn't have to go into that area. She has to read a meter. She can't get around it. Okay. The argument is, if it's a common occurrence for the public, it's a common risk for the public, and there's no greater risk. We understand your argument. Do you want to wrap up on something? We still have time, sir. Actually, you have addressed all the notes that I have. So thank you for that. Now your time is up, though. Why don't you finish with that? The only thought is that, given her flexibility, she's not an employee. Given the intents of the party, she's not an employee. She's an independent contractor, and we still maintain that she was not exposed to a greater risk, despite questions to the contrary. Thank you very much. You will have time on the plane. Okay. Thank you, counsel. Counsel, you may respond. May it please the Court. My name is Rob Edmonds. I represent Steve and Harvey, who is the widower of Jacqueline Harvey, petitioner below at L.A. Have we asked the appropriate questions? Well, you really did, and I almost feel sorry for Mr. Costomani because he's got an impossible task here, in my opinion. That's a good way to begin your argument. It's nice for him to know that. Well, given the standard of review and given the facts of the case and given what the commission decided, I don't know how else to describe that. Does the Court have any particular questions for Appellee? Well, I do, actually. I'm always concerned about this independent contractor thing. It seems, you know, we throw in these terms in our decisions and the law, vexatious, it's this and that. They're all good cover words for, I think, result-oriented decisions, quite frankly, in this area of law. Can you explain to me this business interest intersection concept that the commission came up with as a factor? I'm trying to locate where in prior law we got that factor. Are they creating one? I think it's the Ragler. Pardon? I believe it's the Ragler decision, which is a Supreme Court case, as I recall. It is on the laundry list. It is a laundry list. Yeah, but in Ragler, and in cases subsequent to that, I believe the Court has generally said, because what they said in Ragler was this is, let me look at my laundry list here, okay, the nature of the work performed by employees in relation to the general business of the employer. A truck driver working for a trucking company. Yeah, and I will say Mr. Cosimini's analogy with the lawn boy mowing your lawn doesn't work in this case because what happened here is the city hired her to go out and read their meters. Where I'm going is to kind of simplify this. All right. That factor says, as Justice Hoffman says, the minute you have someone performing the basic job or the basic business purpose of what you hold yourself out as a respondent or company to do, in Illinois, it's always your ability. I don't know that it always is. I think what it says is that it is considered to be of great significance. I mean, I think almost all the cases say that control is really the big one. The main center, right. And there's a number of things we look at on the control issue. But we take one of those out and say, well, this one also should be viewed in great significance. And I think there was an economic argument, maybe Larson related to in some of his writings about that. Then they would have the ability to spread out that cost. If it's part of their business and they can figure that into the price they charge for water, for instance, maybe some other things. So the commission didn't consider a factor that hasn't already been identified by a court of review as significant to the determination. Great significance according to the Supreme Court. Yes. So what we have here, going back to what Justice Hudson initially asked opposing counsel, that being what is the standard of review, this manifest way, I'll just make an observation. In cases of this sort, the determination as to whether or not it's an employee or an independent contractor, whether the individual is one or the other, seems like lip service is paid to that standard of review. And instead, there's a de novo review that is pursued by the one challenging the determination of the employee. Because there is a list of factors that the courts have identified, and then there's also the weight to be applied to those factors. So it gets, even though mention is made of the standard of review, we end up getting what appears to be a de novo argument being made here. Ultimately, it's how the commission weighs those various factors, and they weighed appropriate factors here. Is that right? I believe it is right. I don't think we can say that they're absolutely positively wrong. This should be an alarm bell in the night that, you know, he should be pointing to some things in his brief and his arguments, saying this is where they were absolutely wrong. I don't know what was going on that day. They were having a bad day, maybe medication issues. But they just missed the boat on this. And I don't see that anywhere in the record, in the brief, in the argument. I mean, they made some differences from the facts. And we had an arbitrator, okay, that ruled against me. Okay, there was one against me. Then we went to the IPL. Then we went to the commission. And it was a two-three decision. So we've already got a split. Two people thought I should win. Two people thought I shouldn't. So clearly, reasonable minds, I think everybody that reviewed this was reasonable, could say one way or the other. And in this particular case, in weighing all the evidence, the commission decided she wasn't employed. And this did arise out of the employment. You know, to address, I feel like I should mention it. Where this happened, and the court has brought up some excellent points about the location and how the general public would not be exposed to this. There are photographs in the record. I've been there first and the testimony from the witnesses say they're accurate. It's kind of a creepy place. I mean, this is not a place. The people that found the body, they had to find it. They had to go looking for it. They had to traipse through the woods to find her laying face down in the pool of water because it's down a hill, there's foliage around there, there's trees. This is not a path that is well-traveled by the general public. This is on private property off of an oil lease service road. It is not well-traveled at all. Her vehicle, according to the testimony, was sitting there idling for quite a long time, the radio playing with the route books from the city in there. And somebody finally called the city, and this is in the testimony, and said, hey, do you have somebody out here reading the meters? Is the meter reader out here? Yeah, why? Well, we think there may be a problem, or some words to that effect. And the owners of the property went out there and looked, and they found her. They tried to revive her. Obviously unsuccessful. But it is not a place and a condition that the general public is exposed to. It is not a puddle, no matter how many times Mr. Kosofsky says it. If kids or grandkids, they might play in a puddle on a rainy day. You would not want anybody related to you or that you know playing or spending any time in this isolated area. This is the kind of place, if you were going to dispose of a body, you would put it. And people would have a little difficulty finding it, frankly. Any other questions? I don't think there are. Counsel, thank you. Thank you. Counsel, you may reply. I have nothing further to reply. Okay, well, thank you, counsel, both for your arguments on this matter. You will be taken under advisement with this positional issue, and the court will stand and recess subject to call.